THOMAS HOWE *versus* BENJAMIN W. FARRAR.

To maintain trespass, the plaintiff must show that he has actual or constructive possession of the property sued for, and the defendant is not put to his justification until the fact of possession is established by the plaintiff.

One who relies wholly upon constructive possession arising by implication of law, from the alleged fact that the legal title is in him, must first establish his title, or he is left without possession and without any basis on which to maintain an action of trespass.

When, to prove his title, the plaintiff introduced a mortgage from F. to himself, and the defendant replies that he obtained no title, and consequently no constructive possession by that mortgage, because F. had none at the time, having previously divested himself of the title to the property by mortgage to B., the latter mortgage is admissible as evidence tending to show that fact.

EXCEPTIONS to the rulings of DAVIS, J., presiding at *Nisi Prius.*

This was an ACTION OF TRESPSS for the alleged taking and conversion of two horses and two harnesses by one Charles Perkins, in the capacity of a deputy of the defendant, who was sheriff of the County of Washington, in attaching said

16

property on a writ in favor of Thomas Sawyer, of Calais, against Samuel J. Foster, of Weston. The writ is dated August 18, 1856. The general issue was pleaded and joined, and a brief statement by the defendant, justifying as an officer, and setting forth several grounds of objection to the validity of the title asserted by the plaintiff.

The plaintiff claimed title to the property sued for, by virtue of three several mortgages purporting to have been executed by Samuel J. Foster, of Weston, to him, the validity of which was contested, on several grounds set forth in the defendant's brief statement, which will be understood from the instructions given or requested to be given, by the presiding justice. In the trial, the defendant offered to read the mortgage of S. J. Foster to B. F. Brown, to show the conduct of Foster, in connection with other evidence in the case, from which fraud might be inferred between the parties to the mortgage under which the plaintiff claims, and also to show that the same horse claimed by the plaintiff under his mortgage was included in this mortgage offered by the defendant. This evidence was objected to by the plaintiff's counsel as irrelevant, and it was excluded on that ground. The defendant also offered in evidence the mortgage of Foster to Thomas Gilpatrick, from which, in connection with the other evidence in the case to authorize the jury to infer fraud. This being objected to by the plaintiff's counsel, was ruled out on the ground of irrelevancy. The defendant also offered to show that Samuel J. Foster directly or indirectly purchased at the sheriff's sale most of the property attached on the writ against said Foster in favor of said Sawyer, and left in Foster's possession, who still has the most of it, amounting to about $4000 in value, which was also objected to, and ruled out as irrelevant.

The presiding judge was requested by the defendant's attorney to instruct the jury:

1. That if the mortgages under which plaintiff claims the horses and harnesses sued for in this action were not delivered to him prior to their attachment by the defendant's

deputy, Charles Perkins, the claims of the plaintiff under such mortgages cannot be sustained. This was given.

2. That the plaintiff's claim under these mortgages cannot be sustained against the defendant, unless the property was delivered to or taken possession of by the plaintiff prior to the attachment by the defendant's said deputy. This was refused, and the judge instructed the jury on this point, that if, in accordance with a previous understanding between Foster and Howe, testified to by Foster, that Foster should give to Howe from time to time mortgages on all the property Foster should accumulate to secure Howe for advances to him, Foster executed and carried these mortgages, under which the plaintiff claims the property sued for, to the town clerk, and had them recorded, that would, in law, be a sufficient delivery. After that Foster could not cancel the mortgages without consent of Howe, and if there was no further delivery that would be sufficient.

3. That a formal or symbolical delivery of the property by the mortgager to the mortgagee, or to some one in his behalf, was essential to the validity of the mortgages as against the attachment made by the defendant's deputy. The judge declined to give this instruction, and instructed the jury that the mortgaged property, if mortgaged to secure a debt exceeding the sum of thirty dollars, need not be delivered, if recorded by the town clerk in the town where the mortgager resides. And though it has been contended and argued by the defendant's counsel, that where the mortgagee lives out of the state, where it would be difficult, and sometimes, perhaps, even impossible, for creditors to avail themselves of the statute provision requiring the mortgagee of personal property to give a correct statement within a limited time after demand by any person desiring to attach the mortgagee's interest of the amount of his claim on the mortgaged property, to enable the creditor to tender the amount of such claim, and attach the property, and hold it, yet this does not change the right of the mortgagee. He has the same right as though he resided in this state. This

statute was designed for the benefit of creditors, but in providing for their security it was not designed to impair the rights of the mortgagee in respect to the validity of the mortgage.

4. That said mortgages were void in law, from what appears on their face. This request was refused, and the judge instructed the jury that the mortgages, if duly executed and recorded, were *prima facie* sufficient to pass the property, shifting the burthen of proof to the defendant, to impeach them, and to show their invalidity.

· 5. That if said Foster, in giving said mortgages, had any fraudulent intention of covering up the property from his creditors, or of deterring other creditors from attaching it, concurred in by the plaintiff, they were void as against the said attachment. Upon this the judge instructed the jury, that mortgages were valid, unless they were executed with the intention, at the time of their execution, on the part of both Howe and Foster, to defraud or delay creditors, and that they must be satisfied that these particular mortgages, one or more of them under which the plaintiff claims the property in question in this action, were thus made in fraud of the creditors of Foster, to render them invalid; that if the evidence should satisfy them that the other mortgages were fraudulent, that is not enough, unless they should also be satisfied that these particular mortgages were so.

6. That if any part of the purpose of said mortgages by the parties was to deter the creditors of Foster from attaching the property, and to protect it for the benefit of said Foster, so that he might use and enjoy it, they were fraudulent and void, as against the attachment. This was substantially given, confining it to the time the mortgages were made.

7. That if plaintiff knowingly permitted said Foster to sell and dispose of, and appropriate to his own use, for his own support or benefit, the proceeds of a considerable part of the property covered by each of said mortgages, or any of them, without paying to said Howe the value of such property,

such mortgage or mortgages are invalid against said attachment. The judge instructed the jury that such facts would be evidence from which they might infer fraud; that they might consider whether such proceedings were consistent or not consistent with the usual manner in which honest men would conduct with property which they had *bona fide* taken a mortgage on for security, and the jury will judge whether it is the usual mode of honest men to take security on property and then allow the debtor mortgagee to consume it.

8. That if the plaintiff permitted said Foster to retain the possession of the property claimed by him under the mortgage of June 26, 1850, an unreasonable length of time, using it as his own, it was invalid against said attachment, and that from June 26, 1850, to November 24, 1855, was an unreasonable length of time for such possession under that mortgage.

9. Same as to the mortgage of December 1, 1853.

10. Same as to the mortgage of January 1, 1853. Touching the three last named requests the judge instructed the jury that the length of time which the mortgagee permitted the mortgager to remain in possession of the property might be so great as to authorize the jury to infer fraud from it, and they would judge whether the length of time Foster was allowed to have the possession of the property included in these mortgages, one being over five years, one nearly three years, and the other over two years, without any demand on the part of Howe, are not circumstances inconsistent with honest intentions, from which they may infer fraud.

11. That the jury, in determining the question of the validity of the mortgages under which the plaintiff claims, are at liberty to look to and take into consideration the evidence adduced tending to show the situation and circumstances of the parties, and their conduct touching the mortgaged property, and if the jury find any of it, which, from its nature and the circumstances attending it, the jury are satisfied could not have been, and was not, intended for security, the

mortgages covering such property would be invalid against attaching creditors.

This was substantially given, with the additional remark, that such would be the law only in case Howe is found to have intended to aid Foster in covering up such property, to hinder, delay, or defeat creditors.   And further instructed them, that a mortgagee might sell, exchange, and dispose of and consume, the property mortgaged with honest intentions, if he substituted other property of equal value and made a new mortgage of such property to the mortgagee, to secure the same debt.   And such a transaction would not necessarily be fraudulent as to other creditors.   The presiding judge was also requested to instruct the jury, that if they found that Foster had been doing business under the firm of Samuel J. Foster & Co., and his goods purchased, invoiced, marked and forwarded in that name, and made mortgages to the plaintiff in that firm name, when, in fact, he had no partner, and this was known to the plaintiff, this would authorize the jury to infer fraud in the making of these mortgages, and a knowledge and acquaintance in it on the part of Howe. The judge declined to give this instruction, and instructed the jury that it was very common for a person to do business in the name of a firm, when no partnership existed, and no inference of any fraudulent intent could be drawn from such facts, in regard to the mortgages under which the plaintiff claims.   With regard to the form of the action, the judge instructed the jury that there was no legal objection to the form of the action.

The verdict was for the plaintiff, and the defendant excepted.

*George W. Dyer* and *J. Granger*, counsel for the defendant.

The presiding judge erred, in excluding the mortgage from S. J. Foster to Benjamin F. Brown.   This mortgage was executed, recorded and delivered.   It was to secure the performance of a bond to pay the debts of the late firm of B. F.

Brown & Co., composed of B. F. Brown and said Foster.   It probably embraced all the personal property Foster had at that time, which was probably worth $3000.   Included in this mortgage is much of the same property mortgaged to the plaintiff June 26, 1850, and especially the mare *Jessie* bought of Whitney, sued for in this action.

If that was a valid mortgage, the legal title to the horse Jessie was in Brown, and this action is not maintainable to recover its value.   *Rugg* v. *Barnes*, 2 Cush. R., 391 ; *Smith* v. *Smith*, 11 Shep. R., 555.

As the property was not taken from the plaintiff's possession he can recover only on the strength of his own title. Any evidence, therefore, tending to show that the legal title to the property was not in him was competent.   The mortgage itself, duly executed, delivered and recorded, was *prima facie* sufficient to establish that fact.   *Davis* v. *Hill*, 18 Pick. R., 394 ; *Brinley* v. *Spring*, 7 Greenl. R., 241, 254.   If Brown's mortgage was valid, he has a right of action against the defendant for the horse Jessie.

The mortgage from Foster to Gilpatrick was admissible as affecting the same pretended arrangement, showing that Foster continued to control and dispose of his property to suit his convenience, and without any objection on the part of the plaintiff.

The proof offered of Foster's purchasing the property, held in Mr. Sawyer's writ and execution, to the value of $4000, and Foster's retaining it in his possession, had a tendency to show Foster's fraudulent conduct towards his creditors, and his determination to keep the possession of this property at all events.

The instruction given under the first request, as to the delivery of the mortgages under which the plaintiff claims, were erroneous.   Making them and procuring them to be recorded did not constitute a delivery, so as to make them effectual as a valid contract.   The acceptance on the part of Howe, or his express assent to them prior to the attachment, was indispensably necessary.   *Jewett* v. *Preston*, 14 Shep. R.,

400; *Maynard* v. *Maynard*, 10 Mass. R., 456; *Dole* v. *Badman*, 3 Met. R., 139, 142; *Sampson* v. *Thornton*, 3 Met. R., 275, 281; *Travis* v. *Bishop*, 13 Met. R., 304; *Carr* v. *Hoxy*, 5 Greenl. R., 60; *Ballard* v. *Hinkley*, 5 Greenl. R., 272; *Beals* v. *Allen*, 18 Johns. R., 363; *Canfield* v. *Ives*, 18 Pick. R., 253; *Jackson* v. *Phipps*, 12 Johns. R., 418.

A ratification cannot affect intervening right of third persons. *Sturdivant* v. *Robinson*, 18 Pick. R., 186.

Foster was not requested to make the mortgages under which the plaintiff claims. He had no authority from the plaintiff to cause them to be recorded, and there is no evidence that the plaintiff accepted them, or assented to them, or claimed under them, or knew of their existence prior to the attachment. There are stipulations · in the mortgages to which the law would not presume his assent. It does not appear from whose possession they came when they were produced at the taking of the depositions of Foster and his son Henry, and Jacob Skillinger, which is the first knowledge we have of them.

The second and third instructions should have been given. The mortgager resided out of the state. He could not, as we contend, avail himself of the provisions of the statute as to recording mortgages of personal property, without placing himself in a position to comply with the provisions of ch. 114, s. 71, requiring him to render an account of the amount of the debt or demand secured by the mortgage, within six hours after demand made upon him in writing, by any person wishing to attach the interest of the mortgager. If no such demand could be made, why should it not be dispensed with, and the property be open to attachment, if found in the possession of the mortgager, without it. The mortgager should place the property in the possession of some person, on whom the demand could be made, authorized to receive the tender of the amount of the mortgagee's claim, or suffer the consequences attached to a neglect to render the account required by the statute.

The fourth request should have been complied with. A

part of the mortgaged property was, in its nature, subject to be consumed in its use, and was doubtless intended to be so consumed by the mortgager. Such a mortgage has been held to be invalid. *Robbins* v. *Parker*, 3 Met. R., 117.

There was another mortgage of the same date, from Foster to the plaintiff, of all the stock in trade now in and about the store occupied by him, together with the furniture, stove, scales, &c., valued at $2000, with a stipulation that Foster might remain in possession until the plaintiff should decide otherwise. *Divin* v. *McLaughlin*, 2 Wend. R., 596.

The instruction given to the fifth request was erroneous, because it limits the evidence of the fraudulent intent of the plaintiff *to the time of the execution of the mortgages*, when, in point of fact, there is no evidence that the plaintiff knew of the existence of them at the time of their execution.

The instruction to the sixth request is open to the same objection.

The instruction to the seventh request is erroneous, as authorizing the jury to find that a mortgagee might honestly take security on property and allow the debtor mortgager to consume it. Such a proceeding is not warranted by law, and the presiding judge should have so instructed the jury; and that if they found such facts, the law denounces them as fraudulent. *Robbins* v. *Parker*, 3 Met. R., 117, before cited. There being no dispute about the facts, it becomes a question of law whether the mortgage, under the circumstances, was valid. *Divin* v. *McLaughlin*, 2 Wend. R., 596.

The eighth, ninth and tenth requests should have been given. What is a reasonable time, when the facts are not in dispute, is a question of law. The facts here are the dates of the mortgages and the date of the attachment, respecting which there was no controversy, and there was no pretence of any demand of, or interference, on the part of the plaintiff, with the mortgaged property. *Atwood* v. *Clark*, 2 Greenl. R., 249; *Wingate* v. *King*, 23 Maine R., 35; *Kingsley* v. *Wallace*, 14 Maine R., 57; *Douglass Axe Co.*, 10 Cush. R., 88; *Hill* v. *Hobart*, 16 Maine R., 164. There being no time

stipulated for payment, the condition was broken immedi-
ately, and the title became absolute in Howe in sixty days.

The instruction given to the eleventh request was errone-
ous, as it authorized the jury to find the mortgages valid, if
the plaintiff did not intend thereby to aid Foster in covering
up the property, to hinder, delay, or defeat creditors,
although they should find that the mortgages, from the
nature and circumstances of the property, and the conduct
of the parties respecting it could not have been, and were
not, intended for security. The instruction should have
been, that, if they found these facts, the mortgages were
fraudulent. *Hartshorn* v. *Eames*, 31 Maine R., 93 ; *Twines'
Case*, 3 Coke, 80.

The instruction that a mortgager might sell, exchange, or
dispose of and consume, the mortgaged property, with hon-
est intentions, if he substituted other property of equal value
and made a new mortgage of said property to the mortgagee
to secure the same debt, and that such a transaction would
not necessarily be fraudulent, as to other creditors, was
clearly erroneous.

This instruction is also open to the objection that it was
calculated to mislead the jury, as it was not proved or con-
tended even, that Foster substituted other property for the
property sold, disposed of and consumed by him, and made
new mortgages of it, as a substitution of the old.

The instruction requested respecting the assumed partner-
ship and the mode of invoicing and marking the·goods pur-
chased by Foster, should have been given. At least, these
facts should have been left for the consideration of the jury,
to determine whether there was or could have been, under
the circumstances, any honest purpose in these proceedings,
and whether or not they were not designed to aid in cover-
ing up the property from the creditors of Foster, and wheth-
er the plaintiff was not aiding and assisting Foster in such
fraudulent purpose, if they should find it to exist.

In the instruction given to the first request respecting the
recording of the mortgages, the Judge says, "If, in accord-

Howe *v.* Farrar.

ance with a previous understanding between Foster and Howe, testified to by Foster, that Foster should give Howe from time to time mortgages on all the property Foster should accumulate, to secure Howe for advances to him, Foster executed and carried these mortgages," &c.

Now there is an objection to this mode of presenting this evidence for the consideration of the jury. It seems to assume that there was such an understanding between Howe and Foster, that Foster should give Howe from time to time mortgages on all the property he might accumulate, and to give the sanction of law to such an understanding. On looking into Mr. Foster's deposition, he states, on cross-examination, that he did not know that there was any such an agreement, and makes further statements in relation to the giving of security, well calculated to destroy all confidence in the truth of the statement first given, touching the understanding alluded to by the judge, and in fact completely negatives it.

On the motion to set aside the verdict, I will merely say, that the verdict is against law and evidence, as the plaintiff founds his claim solely on the ground of three mortgages from Samuel J. Foster to him, and there is no evidence that these mortgages were delivered to, or accepted, or assented to, by the plaintiff, so as to make them effectual and binding contracts, prior to the attachment of the property sued for, by the defendant's deputy.

Under the instructions given, these facts cannot be considered as found by the jury. But if they could be, the finding would be against evidence, or rather without evidence. At any rate, it would be against law. No question was made, or can be made, as to the validity of the attachment, if the property belonged to S. J. Foster. It being found in his possession, and being legally attached and sold as his, upon execution, the plaintiff's action could not be maintained, without proving a valid title in himself. That he has failed to do. The evidence of fraud, on the part of Foster, acquiesced in by Howe, seems to be abundant.

*Rowe & Bartlett,* and *Bion Bradbury,* counsel for the plaintiff.

RICE, J. Trespass for taking certain property described in the writ. The defendant was, at the time of the alleged taking, sheriff of the county of Washington, and Charles Perkins was his deputy. The acts complained of were performed by Perkins. The defendant pleaded the general issue, with a brief statement, alleging that the property was taken as an officer, by virtue of a writ against one Samuel J. Foster. The case turned upon the question of title. To establish his title, the plaintiff introduced three mortgages from Samuel J. Foster to him, covering the property in controversy; one dated June 26, 1850; one January 1, 1853; and one December 1, 1855, with proof of their execution, &c.

In defence it was contended that these mortgages were fraudulent and void as to the creditors of Foster, and that the legal title to one of the horses, the mare called " Jessie," was not in Foster at the time she was mortgaged by him to the plaintiff. Among other evidence offered by the defendant to establish those points, was a mortgage from said Foster to one B. F. Brown, dated October 11, 1848, in which, there was evidence tending to show, the mare " Jessie " was included under the name of the " Whitney" mare. This mortgage was excluded by the court, and, as the defendant contends, erroneously.

It is contended, that the defendant cannot avail himself of the Brown mortgage, to justify his taking, by showing title in some party other than the plaintiff, unless he can connect himself with such outstanding title. This is undoubtedly true, if the object of the introduction of such evidence was to justify the taking of the property from the *possession* of the plaintiff. But the defendant denies that the possession was in the plaintiff at the time of the alleged taking.

Trespass lies for an injury to the possession. To maintain this form of action, the plaintiff must show that he has actual or constructive possession of the property sued for. The

Howe *v.* Farrar.

defendant is not put to his justification until the fact of possession is established by the plaintiff; which fact may be controverted by the defendant.  Now it is not claimed that the plaintiff ever had actual possession of the mare "Jessie." He had no personal knowledge of the animal—never saw her.  He relies wholly upon constructive possession, arising by implication of law, from the alleged fact that the legal title was in him.  Unless, therefore, he can establish his title, he is left without possession, either actual or constructive, and consequently without a basis for his action to rest upon, so far as this piece of property is concerned.  To prove his title, he introduced a mortgage from Foster.  The defendant replies that he obtained no title, and consequently no constructive possession, by virtue of that mortgage, for the reason that Foster had, before the execution thereof, divested himself of his title to the property, by mortgaging the same to Brown, and to show that fact, offered the Brown mortgage in evidence, which was excluded by the court. How the fact would have turned out, had the evidence offered been admitted, we cannot determine.  Further investigation might have shown that the Brown mortgage had been paid, or in some way canceled or discharged, in which event the plaintiff's title and his constructive possession would apparently have been established; or it might have turned out that the mortgage had been foreclosed, and that the title of Brown had become absolute.  This would have wholly defeated the plaintiff's right of action, in which event the defendant could not have been called upon by him, to justify his taking.  The Brown mortgage was competent testimony, tending directly to establish this proposition, whether it was sufficient, or could have been made sufficient, with other testimony in the power of the defendant to introduce, we cannot determine.  It certainly would constitute an important link in a chain of evidence having that legitimate tendency, and for that purpose should have been admitted.

An examination of the cases cited, and relied upon by the plaintiff, will show that the fact of *possession* in the plain-

tiff was either not controverted, or was established by the proofs.

The mortgage to Gilpatrick, offered by the defendant, dated December 22, 1855, was properly rejected. It could have no legal tendency to show fraud, or want of title in the plaintiff, being long after the date of his last mortgage relied upon.

There were many exceptions taken to the instructions of the presiding judge, and also to his refusal to give other instructions which were requested. But on examination, we do not find any errors in matters of law by which the rights of the defendant would have been prejudiced, or injuriously affected. It is not, therefore, deemed necessary to examine those objections in detail. In consequence of the rejection of the evidence above referred to, a new trial must be had.

*Exceptions sustained,*
*and a new trial granted.*